19-2084-P.R., and we'll hear from Mr. Reinhardt. Good afternoon, Your Honors, and may it please the Court. My name is Alex Reinhardt, and I represent the appellant, Devin Darby, in this matter. I preserve two minutes for rebuttal. Your Honors, this case is straightforward. While he was detained at Rikers Island, Mr. Darby experienced serious medical problems which were not addressed by defendants. It was not until he was in the custody of New York State that he finally received the treatment he needed for the large mass in his right gum area, oral surgery. Proceeding pro se below, Mr. Darby filed a complaint containing allegations that established, one, that he suffered from an objectively serious medical condition while he was at Only one of the defendants appearing before the Court today sought permission to move to dismiss. The District Court did not wait for the other defendants to be served or identified, did not ask for full briefing on the matter, but instead dismissed the claims against everyone, based in part on arguments that were never even raised by the defendants below, even as the presiding magistrate judge was in the process of ordering that Mr. Darby obtain information necessary to identify and serve the DOE defendants before the expiration of the statute of limitations. The District Court, in doing so, did not draw inferences in plaintiff's favor, which is improper at the motion-to-dismiss stage, particularly where the plaintiff was pro se. I note that the plaintiff here did obtain the assistance of an attorney in typing up one of his complaints, but he otherwise was proceeding without representation other than himself. The District Court erred because Mr. Darby's complaint suffices to allege plausible claims that the defendants violated the Eighth and Fourteenth Amendments. I want to pause just for a moment to talk about the objectively serious medical condition prong of this case. It applies to both the Eighth and Fourteenth Amendment deliberate indifference claims, and I think it's clear that the allegations that Mr. Darby made established the existence of an objectively serious medical condition, as cases in this circuit have established, cases that the District Court did not discuss, controlling cases such as Harrison and Chance, and these cases, along with many others, demonstrate that Mr. Darby's allegations establish an objectively serious medical need. He alleged that he had a large mass in his gums that caused serious inflammation, swelling, significant pain, interfered with basic aspects of his daily life, and ultimately required oral surgery, caused him to lose sleep, caused him to lose weight, and this Court has held that similar allegations suffice at the pleading stage to establish an objectively serious medical condition. It did so as recently in Gaffney v. Perlmutter, cited in our brief, that's a Second Circuit decision from April 2020. In Harrison, the Court held that a tooth cavity is a serious medical need. Same in Chance. In Cole v. Dalsheim, the Court held that an incarcerated person's need for prescription eyeglasses was a serious medical condition because in its absence, the plaintiff suffered headaches and he was impaired in his daily activities. The Court has summarized the standard in Brock as whether a reasonable doctor or patient would perceive the medical need in question as important, that's clearly the case here, or whether the medical condition significantly affects daily activities, Mr. Darby alleged that here, or the existence of chronic and substantial pain, Mr. Darby also alleged that. So although those were non-exhaustive factors that Brock identified, Mr. Darby's complaint, taken to be true and with all inferences drawn in his favor, suffice to allege an objectively serious medical condition. The defendant's arguments to the contrary are just flawed in many respects. Partly the defendants point to other cases which had more serious allegations where this court found deliberate indifference was established, but that doesn't suggest that only conditions that satisfy that level of severity also are necessary to establish deliberate indifference. The defendants also suggest the plaintiff didn't use the right adjectives to describe his pain and discomfort, which is inappropriate at this stage of the case. And the defendants also claim that because Mr. Darby didn't allege that his condition posed a risk of future serious consequences to his health, it was insufficient to meet an objective standard of harm, but that's exactly the mistake that the district court made in Darnell v. Preniero, which this court corrected quite clearly. So for those reasons, we think the district court's conclusion on the objective serious condition should be reversed as to deliberate indifference, both objective and subjective. The plaintiff, Mr. Darby, alleged that he told the defendants what he was experiencing, that they did not take action to solve his problems, and that he continued to experience pain and significant distress after he saw them. He alleges that he told them both in his visits to them and that he continued to seek medical care through sick calls, repeated sick calls during the course of his treatment, during the course of his incarceration at Rikers, and that he never received the care that would resolve his conditions. And these allegations are detailed in the complaint, all at JA, at the appendix from pages 15 to 18. And what they all show is that the defendants knew that Mr. Darby was suffering significant pain and complications from his gum condition. They knew that none of any interventions they had offered had alleviated those problems, and indeed that his condition was worsening. There was really no interventions that they offered, but they knew that his conditions were worsening. And this is quintessential deliberate indifference, whether measured subjectively or objectively. And the court said in Hathaway, where a doctor was aware of the plaintiff's pain, a jury could infer—this is at the summary judgment stage, not the motion to dismiss stage—a jury could infer deliberate indifference from the fact that the doctor knew the extent of the pain and knew that the course of treatment was largely ineffective and declined to do anything more. And those are the allegations that we have here. There are controlling Second Circuit cases that the district court did not even attempt to explain or distinguish or cite. Harrison, where the plaintiff requested treatment for a cavity, but the defendant insisted on a related tooth. And this court construed that claim as not a delayed treatment case, but a denial of treatment case, and found that there was a sufficient allegation of deliberate indifference at the summary judgment stage. Chance, there was another case involving a cavity where, again, the caregiver insisted on doing a tooth extraction, and the plaintiff didn't believe that was necessary. And in Chance, just as in this case, the plaintiff ultimately obtained treatment for his condition without having his tooth extracted, and the court found that those allegations suffice to establish deliberate indifference. I'll just close by saying there's one last set of defendants who I think it's worth talking about is the Doe defendants, who Mr. Darby was seeking to identify when the district court dismissed the claims, even though no one had appeared on behalf of the Doe defendants. And the argument, the only reason the district court gave, it gave one reason for dismissing Mr. Darby's claims against the Doe defendants was that he didn't allege that the grievances and sick calls that he filed reached the Doe defendants. And that is reasoning directly contradicted by this court's holding in Grolin, where the court said in Grolin, we can infer from the fact that the plaintiff says he sent the letter to the warden that the warden received it and the warden read it, at least we can infer that at the motion to dismiss stage. And so that is the reason, Your Honor, that at this stage, we believe, drawing all the inferences in the plaintiff's favor, that the court should reverse and remand the district court's decision. I look forward to the court's questions. Judge Carney. Mr. Reinhart, suppose we agree with you that the deprivation was sufficiently serious. Your client clearly had a, it turned out that he had a very serious condition and that there was a mass that was ultimately removed. And so we agree with you on that. If we could just focus on the sufficiently, whether the defendants had a sufficiently culpable state of mind, Dr. Greenman and Dr. Hamilton. With regard to Dr. Greenman, who proposed the extraction, my understanding from the complaints allegations is that no one knew that there was a mass, yet there were no imaging studies that were done, which may be itself as a problem. But I don't know what was available to them. And Dr. Greenman saw him either once or twice and twice offered, I think, to extract the pain because the source of the pain then wasn't clear. It's not apparent to me why that amounts to deliberate indifference, that he proposed to do something that maybe had turned out not to be the right thing to do to solve the pain, but was his best judgment at the time. Why does that evidence deliberate indifference? Oh, for a few reasons, Judge Carney. And I want to unpack the question if I could. First of all, I actually think the court very well can and should infer that the inflammation and the mass was obvious at the time. It was a three centimeter by three centimeter mass. That's more than a square. That's basically a cubic inch. That's a large mass. And so if we're reading the allegations and drawing them in the favor of the plaintiff, I think we have to draw the inference that they were, that it was apparent. Let me interpret it. It was three by three centimeters when? At the time it was removed? A year later? Well, Your Honor, all I know is that Mr. Darby had an allegation that says it was three by three. It doesn't say when, although I believe the allegation says it was. If you look at the JA, it says that it was at the time he presented. Now, these were additional allegations that Mr. Darby attempted to include in a proposed amended complaint. These were allegations that the district court found would be futile, denied leave to amend because he found that would be futile. But again, we have to understand Mr. Darby was proceeding pro se, and so I think we should take all those allegations together. But let me, so that's number one. Number two, what I think, and the district court read the complaint this way, at least it said it read the complaint this way. What we can take from the allegations is that actually Dr. Greenman agreed with Mr. Darby that he needed to see a specialist. And there's no evidence that he actually went through the process of ensuring that Mr. Darby see a specialist. And the district court understood the complaint to allege that Dr. Greenman never made the referral. But is it the case that, excuse me, this was at the beginning of June, right? And Mr. Darby was at Rikers as a pretrial detainee for a brief period of time and then moved on. So it wasn't clear to me that Dr. Greenman actually had the time spans he might have needed to ensure that a referral happened. Is that correct? Well, he saw Mr. Darby at the end of February, Your Honor. Whether he had the time is not, I mean, we can't draw that inference against Mr. Darby. That's a question that would have to be resolved in discovery. And it could be that the evidence shows that number one, Dr. Greenman did make the referral and he made every effort to make the referral and he just didn't have time. But we can't draw the inference against Mr. Darby at this point. No, but let me just say that my concern is whether one can rule it out from looking at the complaint. And you're saying no, that it's entirely possible and that a reasonable inference can be drawn in Mr. Darby's favor about Dr. Greenman's knowledge and the possibilities available to him for treatment. Is that right? Well, I think the inference that can and should be drawn in Mr. Darby's favor is a variety of things. Number one, that the problem was obvious when he presented. Number two, that Dr. Greenman agreed that a tooth extraction would not solve the problem and that he needed to see a specialist. Number three, that Dr. Greenman didn't make the referral to the specialist. Number four, as Mr. Darby continued to complain about the symptoms he was experiencing and the extreme pain he was in, that the defendants were aware that he continued to be in that state and took no additional steps to alleviate. Excuse me. So when you say the defendants, I'm trying to be very specific about what Dr. Greenman knew and could do, what Dr. Hamilton knew and could do. And then separately, what the John Doe defendants knew and could do. So Dr. Greenman knew that he was experiencing significant swelling, that the tooth extraction would not alleviate it, that he needed to see a specialist, and that he continued to experience pain during the entire time that he was under the care of Dr. Greenman. And Dr. Greenman, during that time, took, again, taking the complaint's allegations and drawing them in, and drawing the inferences in favor of Mr. Darby, that he took no additional steps to solve Mr. Darby's problems. Now, as to what he could do, that is simply, I don't think there's any way the court could draw an inference against Mr. Darby at this stage. I think the district court sort of drew that inference, but there's nothing in the complaint to suggest that Dr. Greenman couldn't do something for Mr. Darby's complaints. The only thing that we can draw from the complaint is that he didn't do something for Mr. Darby's complaints. And to the extent the court is entertaining, because, of course, Iqbal looms large here, to the extent the court is entertaining the possibility that, well, there might be some explanation for what happened, the court, the Second Circuit made clear in Anderson News in 2012, 680 F. 3rd 162, that the complaint can't be dismissed if it states a plausible version of the events merely because the court finds a different version more plausible. So even if the court thinks it's more likely that Dr. Greenman couldn't have taken steps, that's not, it's still not appropriate to resolve at the motion-to-dismiss stage. Well, could you address the same question as to Dr. Hamilton, that he actually knew, but disregarded the need to take action? Sure, absolutely, Your Honor. So when Mr. Darby presented to Dr. Hamilton, he explained everything that, he reported his history, he explained his symptoms, and the only thing Dr. Hamilton offered was to clean his teeth, nothing more. And again, after that, after that visit, Mr. Darby continued to complain. So, I mean, one thing that's interesting about the defendant's submission in their opposition brief is they direct the court to an out-of-record sort of website about the condition that they presume Mr. Darby experienced. And, you know, normally I'd say you have to disregard that, it's not contained in the complaint. If you go to that website, the alleged treatments offered by the defendants here are truth extraction, cleaning teeth, they're not mentioned at all. No one identifies those treatments as actually responsive to the problems suffered by Mr. Darby. So, as Dr. Hamilton, again, we have alleged he knew, we have alleged he didn't do anything in response, and we've alleged that he knew that Mr. Darby continued to experience pain and symptoms after his visit. All of those things at the motion-to-dismiss stage are sufficient to establish deliberate indifference, Your Honor. Okay, thank you very much. This is Judge Park. I'd like to ask about the allegations regarding the DOE defendants. As I read it, the complaint really doesn't seem to allege much more than that Mr. Darby complained and didn't receive a response. There's not anything about when the calls were made, who took them, what the DOE defendants knew or were told or didn't know about Mr. Darby's condition and then what they did or didn't do. There's just really nothing other than, you know, I made these complaints and nothing happened. So there must have been deliberate indifference. And that just doesn't seem to me to rise to a plausible 8th or 14th Amendment claim. Can you respond to that? Absolutely, Your Honor. So I would direct the court to, again, the Joint Appendix between 15 and 18. So the complaint says that on February 10th, he submitted a sick call with details about his condition. Then after he saw Greenman, he submitted approximately 15 sick call requests dealing his work. So the first one, can I just ask you, was that before he saw Dr. Greenman? That absolutely was before, right? Absolutely. And then we have 15. So one would infer from that then that something had been done, no? Well, one would infer that they scheduled an appointment and then he saw the doctor and then he continued to submit sick call requests after he saw Dr. Greenman, to which he received no response. That's 15. He submitted approximately 15 sick call requests detailing, this is what the complaint says, detailing his worsening condition. And there are similar allegations with respect to Dr. Hamilton. So the allegation is, and part of the problem, Your Honor, is that Mr. Darby did not know the identity of the people who were processing the sick call requests. So he was trying to discover the identity of those individuals. And the magistrate judge had ordered discovery. And literally three weeks after the magistrate judge, the defendants had said, we found some records that might help us figure out who the Doe defendants are. The district court just dismissed the entire case. Again, none of the arguments, you know, the arguments about deliberate indifference that were made in the district court were only arguments focused on Dr. Greenman. None of the arguments were focused on Dr. Hamilton or the Doe defendants. So Mr. Darby never had an opportunity to provide the additional level of detail that Your Honor may be requesting. What he knew is he's submitting the sick call requests. What we know is, at least as the complaint alleges, those are people who are supposed to process the requests and arrange for a response. And none of that was happening. So that's what we know. And again, if we take this court's decision in Groen, that is enough to establish the personal involvement of the individual defendants in the lack of care that Mr. Darby received. Again, discovery may show something different. We don't know. That's what discovery is for. But at this stage of the proceeding, Mr. Darby has alleged that there were defendants who were aware of his condition, who were obligated to do something, and who didn't do something. I mean, that's deliberate indifference. Thank you. Thank you, Your Honor. Mr. Reiner, this is Judge Cabranes. Let me follow up on Judge Park's inquiry regarding the Doe defendants. But perhaps by way of prelude, can you describe the posture of this litigation or the history of it? When did you come into this action? Give us a brief timeline of how this case proceeded. And then eventually, I want to get to the Doe defendants and the Otis Banton Correctional District. Outline, in short, how things proceeded. Who was the magistrate? How did it get to the magistrate? What did the magistrate do or not do? Okay, so it was filed pro se in 2018 by Mr. Darby. And just to answer your question about how I came into the case, I was appointed by the court from the Civil Appeals Panel to represent Mr. Darby pro bono. The district court, when it issued its decision, had certified that any appeal would not be made in good faith. This court, when it saw the appeal, decided to appoint counsel. And so I'm representing Mr. Darby pro bono pursuant to my duties on the Civil Appeals Panel. So I'm in this case. I came into this case on the appeal. So Mr. Darby files his complaint pro se. It immediately becomes clear that there's an issue with respect to the identity of the DOE defendants. And as I understand it, the magistrate judge was—I think there was a referral order from Judge Kogan to Magistrate Judge Scanlon. And there were a series of discovery conferences at which the magistrate judge was trying to get to the bottom of how it would be possible to discover the identity of the DOE defendants. And I think the defendants were making—the city was making good faith efforts to help to identify the DOE defendants. And in April of 2019, I believe, the magistrate judge received a letter—the defendants filed a letter saying that—well, or the city filed a letter saying, we found some records, some sick call records. We're not sure if they would help us identify who the DOE defendants are, but we think it might be a good place to start. And it was a month and a half later that the complaint was dismissed. So, Mr.— Hold it. Hold it right there. Hold it right there. Yeah. So, there is a document, some statement from the city, from Ms. Paulson or one of her colleagues, addressed to whom? Addressed to Judge Scanlon. Okay. And that document said what, in summary? That document said—I believe it's a JA-61. That document said, in response to your order, despite multiple requests, we've tried to find some documents. We've been having difficulty because of where they're stored. And then closes by, on a more encouraging note, we have located some logbooks regarding the dates at issue, which might help us identify who was getting sick call and might provide some information, as the letter says, as to the sick call requests that Mr. Darby claims to have completed during the period at issue. All right. So, that letter goes to Mr. Darby as the pro-state plaintiff, as well as to the magistrate judge, correct? Correct, Your Honor. And what happens, if anything, at this point, between then and the time that there's an order entered by Judge Cope? Well, nothing happens with respect to those documents. As I understand it, Mr. Darby was awaiting the opportunity to review them. But before he could review them, the complaint was dismissed. All right. I mean, the defendant... Sorry. Sorry, Your Honor. Well, Ms. Paulson will explain to us what she knows, if anything, about this. But, in any event, this letter goes to the court and to the pro-state plaintiff. And at this point, what is the status of the inquiry regarding the identity of the Doe defendant? Well, so, at this point, I think there's still an effort ongoing to... You mean, at this point, as we sit here today? I'm sorry, or at this point? No, no. In April 2019. Hold on a second. Hold on a second. Slow. Slow down. Now, there's a letter from the Corporation Counsel's Office that goes to the magistrate judge and to Mr. Darby. Is that right? Well, it's from... It was from HPMB. It was from the private counsel, Hydel Patoni, that was representing all the defendants at the time. So, it wasn't technically from Corp Counsel's Office. Oh, I see. Yeah. Who were they? They were private counsel, I assume. They were retained by the City of New York to handle the case at the trial level. Well, Ms. Paulson will perhaps be able to explain all of this when she comes up, but I'm curious about what was going on. Who knew what when at this point? So, I mean, that takes me to the question of what is it that you want from us with respect to the Doe defendants? Well, Your Honor, what's in front of the court is an order dismissing them for failure to claim. And so, what we want is a reversal and remand. I think that the argument that the defendants are making here that the court shouldn't do so... Hold on. Let's catch our breath. It's best to catch our breath at different clauses. Otherwise, compound sentences of great length can only confuse us all. So, let me just ask you, you want to know who the Doe defendants are, is that right? Yes, Your Honor. I mean, I think that I want the... You want this court to do what about the Doe defendants? Well, I think the only issue pending before this court is whether the Doe defendants were properly dismissed for failure to state a claim. I think if the court reverses and remands, as I think the court should, then the issue of the identity of the Doe defendants will have to be explored in the district court. I don't think that's before this court. Right. Okay. Well, maybe to move from the granular to the unnecessarily broad question, when a Section 1983 plaintiff is a pretrial detainee, where do we draw the line between the standard for malpractice and the standard for deliberate indifference? Or is there a line between the standard for malpractice and the standard for deliberate indifference? Well, the formal difference is that for a pretrial detainee to show deliberate indifference, as Your Honor knows, one has to show objectively that the defendants disregarded a serious harm or a risk of serious harm, which means they should have known about it. Even if they didn't know, they should have known and they didn't take sufficient action. I think that at the pleading stage, it can be awfully difficult to police the line between a typical medical malpractice claim and an objective deliberate indifference claim. And I recite to a one district court decision in the Southern District that points that out. I don't think this case presents that difficulty. That is, I think in this case, we've got a clear allegation that all of the defendants knew and that none of the steps that the defendants took were actually responsive to Mr. Darby's conditions. And in some cases, the defendants took no steps whatsoever. So, but I think that in a hard case, it's a harder line to police. And I think that's probably calls for focusing more on using discovery to get at the difference rather than trying to resolve the case at the pleading stage, which this court has said multiple times in the prison context, both the prison and the jail context, that many of these issues are better resolved through discovery than through pleading. Let me ask you about your own representation of Darby, assuming for the argument that there's some form of remand, that there are further proceedings in the district court. I'm not suggesting there will be. I'm just trying to understand the situation. Is your representation such that you would continue to represent Darby before the district court? Your Honor, there's a number of questions that would go into that. One is obviously discussing that with Mr. Darby. I mean, I think in candor to the court, my full-time job is as a law professor, although I do litigate cases in the time that I have outside of being a law professor. So, I don't want to say it's an unfair question, but I would say that was something I'd have to discuss with Mr. Darby and that I would also have to be very considerate of all the other obligations I have because my full-time job is something other than being a civil rights litigator these days. You can understand from our point of view, if we're considering a prayer for relief, which is to remand to the district court, a lot will depend, I suppose, on what such a remand would involve. Who can do this? Your client was pro se. It would be a futile exercise, it seems to me, to simply prevail in a court of appeals when there's no possibility of any consequential action in the district court after the remand. Can I quarrel with that a little bit, Your Honor? Yes, please. On a couple of levels. So, one is district court decisions that suggest that dismissal in a case like this is appropriate. They have an impact outside of their own court. So, I think, number one, just on the straightforward legal question as to whether or not the district court got it right or wrong, it's extremely important that this court give consideration to that. And we think that here, the answer is the district court got it wrong. And from the perspective of the system, it's extremely important. From the perspective of Mr. Darby, I think, you know, he has already, I think, not been given the solicitousness that we would expect of a pro se litigant. And then to, I think, hold it against him on the chance that if he returns to the trial court, he isn't able to obtain counsel either if I'm not able to do it or if someone else isn't able to do it. That just seems also unfair. There are pro se litigants who are ultimately successful. And yeah, it just strikes me as not fair to Mr. Darby to base the court's resolution of what seems to me a pretty straightforward legal question as to whether or not, in the end, the court thinks that Mr. Darby will be able to obtain relief in a practical matter because of whether or not he'll be able to obtain counsel. I mean, things change when motions to dismiss are denied. Other lawyers in the civil rights bar become more willing to think about taking cases. And so I think that is not a consideration that, to me, the court should be entertaining as it's deciding whether or not the district court correctly resolved the motion to dismiss in this case. Well, where exactly is Mr. Darby in the system? Is he still a pretrial detainee? Oh, he's been released, John. He's not incarcerated. And what was the history of his detention? Well, I know that he was transferred, ultimately, to New York State Docs in 2017. I don't know exactly when he was released, but he is not incarcerated, and he is fully prepared to litigate the case either on his own or with the assistance of an attorney. So he is, I think, in a good position to do so. Let me go back a moment to Dr. Greenman and the extraction of Mr. Darby's tooth. What is your view as to why Dr. Greenman, or what does the record show in your view as to why Dr. Greenman tried to extract his tooth? The record doesn't reflect that, Your Honor. I mean, certainly the court, I think, in Harrison is familiar with, in certain prisons, policies that basically just insisted on extraction in various cases. I don't know if that was what was at issue here. The record doesn't reflect it. But I do think the record reflects that ultimately Dr. Greenman agreed that an extraction was not the appropriate course of treatment for Mr. Darby. Is the claim that the extraction of his tooth had nothing to do with Mr. Darby's gum condition, is that one of the claims? That's, I mean, no extraction was performed. So really the question, I think the extraction plays a role to the extent there is an argument that, well, you know, the defendant wasn't deliberately indifferent because he offered an extraction. And this is exactly the situation that the court confronted in Chance, exactly the situation that the court confronted in Harrison, which is, you know, losing a tooth is a big deal. Chance said it may not be the same as losing an arm or a leg, but it's not inconsequential. And so to the extent that defendants in the court tried to characterize this as, well, a mere difference of opinion, this isn't just a mere difference of opinion. This is a situation where the doctor initially said, I think I should extract your tooth and then realized that that was not the appropriate course of treatment because agreed, he agreed that Mr. Darby needed to see a specialist. So I think that's the only way it plays in is to the extent the defendants and the district court are framing this case as a mere difference of opinion as to medical care. And it's not a mere difference of opinion. This is, there's nothing in the record to suggest, nothing that the defendants have presented, certainly nothing in the complaint to suggest that a tooth extraction is the in any reasonable way on any level to gum inflammation. Again, who knows what discovery will show, but at this stage, those inferences can't be drawn against Mr. Darby. Judge Kourbanas, could I interject one question, please? Thank you. I just noticing in the proposed re-amended claim, um, the description of the three by three centimeter bulge says that that was located at the February 17th clinic screening visit. So that was at the beginning of this whole complaint sets forth that a significant size bulge and either abscess or what have you was identified. Um, which I hadn't really understood in going through the initial complaint. So this is how he proposed to amend his complaint to provide additional details that might shed light on the questions that Judge Kourbanas is asking about, about why extraction or gum cleaning or what have you might, or teeth cleaning might have been appropriate or not. And whether it was well beyond, um, simple difference of opinion about the appropriate treatment. Is that a fair summary? That's fair, Your Honor. And I'm sorry, I tried to make that clear in my answer to your Honor's question earlier and I clearly was not successful in that. But, um, but that's correct. Um, this is the, this is, uh, what Mr. Darby was trying to add to his amended complaint that, that the judge found would be futile to, to, to include in an amended complaint. Thank you. Great. Thank you, Your Honor. Judge Kourbanas. Oh, thank you. Judge Park, any other questions? No, thank you. Okay. So we turn to counsel for defense. Thank you very much, Your Honors. Good afternoon. Susan Paulson on behalf of the appellees. Um, I'd like to use my time to address the plaintiff's failure to adequately plead the element prong of the deliberate indifference test. The plaintiff did not sufficiently allege that the defendants consciously disregarded a known risk to his health. With respect to defendant Greenman, the plaintiff's allegations do not plausibly suggest that Greenman acted either intentionally or recklessly, uh, in the face of an excessive risk to his health that he knew or should have known about. The allegations as to defendant Greenman are that before he saw defendant Greenman, Dr. Satcher had diagnosed a dental abscess. Then when he went and saw Dr. Greenman, he alleges that Dr. Greenman treated him at paragraph 17 of the complaint and that he proposed an extraction, which the plaintiff alleges that he convinced Dr. Greenman not to perform. That's at paragraph 18 of the complaint. And then at paragraph 19, uh, the plaintiff alleges that Greenman, uh, recognized, quote unquote, affirmed his need to see a specialist. Uh, when Dr. Greenman scheduled another visit, the plaintiff alleges that he refused the visit because he did not want an extraction. And that's paragraph 20 of the complaint. This is not like Harrison. There is no flat refusal of treatment because the plaintiff does not allege that he returned to see Greenman and said, I want to see a specialist. And he doesn't allege that he returned and said, I want to see a specialist. And he doesn't allege that in response, Greenman said, if you don't let me perform an extraction, you can't have any treatment. He doesn't allege that Greenman delayed his referral to a specialist. He alleges that Greenman recognized that he needed to see a specialist. And then in fact, he alleges that while he was in pretrial detention at OBCC, a referral was made to a specialist. So there are no allegations that, uh, Dr. Greenman acted intentionally or recklessly in the face of an excessive risk. Now, in addition, there are no allegations that Greenman knew or should have known that either the plaintiff urgently needed to see a specialist or required surgery and consciously disregarded that risk. The pleadings don't support this inference for a very simple reason. The plaintiff alleges that after he was in pretrial detention at Rikers, he then spent two months post-sentence in Rikers. And then ultimately at the end, four months later, after he initially entered the system in February of 2017, four months later in June of 2017, he entered state custody. When he entered state custody, he alleges that he complained about the pain and swelling, the gum inflammation, and that he was referred to a doctor. After the doctor, he had a radiology visit. He alleges after that, he had an evaluation by multiple specialists before ultimately in February of 2018, a full year later and seven months after he entered state custody, he had surgery to remove a benign mass from his gum. He makes no claims against the state for deliberate interference. The vast majority of the delay, seven months, happened in state custody. There's no, it's certainly those allegations don't suggest that Greenman knew or should have known that by not somehow expediting that referral that was made while he was OVC per specialist, or even arguably scheduling a surgery at that intersection where it took multiple specialists and a radiologist after he was transferred to state custody before it was determined that that was the appropriate procedure to address his inflammation and pain. Certainly, but that does not support the inference that Dr. Greenman acted intentionally or recklessly in the face of an excessive risk to the plaintiff's health that he knew or should have known about. With respect to defendant Hamilton, under the eighth amendment, the plaintiff's allegations do not plausibly suggest that defendant Hamilton knew of and disregarded an excessive risk to the plaintiff's health. Here, the allegations belie that exact claim. The plaintiff alleged, at paragraph 37 of the complaint, that defendant Hamilton thought that the cleaning would, quote unquote, solve his pain. He may have been incorrect in that. He apparently was incorrect in that, as the plaintiff alleges that his pain continued, and that may have been the wrong judgment as to what to do. But according to the plaintiff's own allegations, as to this mens rea prong, the mental element, defendant Hamilton thought the cleaning would solve the pain. So there are no allegations. Not only are there no allegations that defendant Hamilton knew that the cleaning would not suffice and that he needed to see a specialist, and there's no allegation that defendant Hamilton intentionally chose the wrong course of treatment. In fact, the allegation is the contrary. So at most, what the plaintiff has is a negligence claim. In some, the plaintiff has not adequately pled the mens rea prong to state a claim for due deliberate indifference. Defendant Greenman had scheduled a follow-up appointment, which the plaintiff alleges that he refused to attend. And as to defendant Hamilton, the plaintiff alleges that defendant Hamilton thought his treatment would solve the pain. I will just... Actually, I will rest there and entertain the court's questions. Okay. Judge Cardi. Ms. Paulson, at this stage, of course, we're dealing with a dismissal of a pro se complaint that is fairly detailed and that describes an extended period of pain related from an abscess that was identified as being in his gums and jaw as early as February 2017. Why, when we are required to give special solicitude to a pro se plaintiff and to draw reasonable inferences in the plaintiff's favor, is it appropriate to affirm the dismissal of this complaint? Isn't there enough here to go farther, to look for medical evidence? With regard to the Doe defendants, obviously, to try to identify them, and with regard to Doctors Greenman and Hamilton, to get a better idea from experts about what their course of proposed treatment, how that measured up. I can imagine it as being reckless, potentially, from what we've heard. But why isn't Darby entitled to drawing those inferences in his favor at this point? Yes, Judge Cardi. I don't believe that the complaint supports those inferences. I don't believe that the complaint supports an inference that Dr. Greenman acted with the necessary mental state. There was, according to the complaint, and it's clear from the complaint, that the source of the inflammation was unknown, and it took a period of time. The plaintiff alleges that there was a swelling identified. He then alleges that there was a dental abscess diagnosed. He then alleges that there was a parotid gland issue that was diagnosed. He then alleges that when he went into state custody, he saw a radiologist. He then alleges that he saw multiple specialists. So, Your Honor, I don't believe that it's a fair inference from the complaint that Dr. Greenman, who saw him at one appointment, offered to see him at another appointment, which the plaintiff refused, that in the two-month period in which he was in the facility that Dr. Greenman was working in pre-trial detention at OBCC, a referral was made to a specialist. I don't think that those allegations support an inference under the 14th Amendment standard that Dr. Greenman acted with deliberate indifference. And what about Dr. Hamilton proposing a cleaning to deal with an abscess? Yeah. And Dr. Hamilton, the plaintiff's own allegation, as I just mentioned, was that Dr. Hamilton thought the cleaning would solve the pain. Now, under the Eighth Amendment standard, the plaintiff has to make allegations that support an inference that Hamilton knew of and disregarded an excessive risk to his health or safety, was aware of facts from which that inference could be drawn, and he must have drawn that inference. And certainly, the allegations in the complaint do not support an inference that Hamilton concluded that a cleaning would create an excessive risk of harm to Mr. Darby's health. But at that point, the complaint alleges that he'd been suffering from pain from February until he saw Dr. Hamilton in June, had shooting pain. The abscess had been identified. And I find it difficult to understand why a cleaning shows an adequate regard for the pain and the history that Mr. Darby had. Well, Your Honor, I would suggest that under the Eighth Amendment standard here for deliberate indifference, I would say that at most, that might support a medical malpractice claim, that it was reckless to do so. But there are no allegations that would support, you know, that possibly allege that defendant Hamilton knew that the cleaning would not suffice and intentionally chose the wrong course of treatment here. He was trying to address pain and inflammation. I am not a dentist, but maybe even if he didn't think it would solve the pain, maybe he thought it would address the pain during the period of time that he was in that facility. He was only there for one more month. That was post-sentence when Dr. Hamilton saw him at RNDC. He was there only one more month after he saw Dr. Hamilton, and then he was transferred to state custody. Even given the complaint, which I don't, it sounds like perhaps my adversary doesn't fully know, and I certainly don't fully know the involvement of the attorney in drafting the complaint. There was an attorney involved. He said the assistance of an attorney in typing up the complaint. I don't know the extent of the attorney involvement, but assuming that it was, you know, so the extent to which we are giving, raising the inferences generously to a pro se litigant here, even doing so, the fair inferences of this complaint do not support, do not adequately plead the mental element wrong of the deliberate indifference test. Thank you very much. Judge Park. Yes, thank you. I'd like to ask you about the allegations concerning the DOE defendants. The complaint seems to allege that they were, I guess, put on notice by the numerous sick call requests and grievances, and why can't we infer from the failure to get a response from those calls that the DOE defendants were deliberately indifferent? Why isn't that enough? Well, Judge Park, I think it goes back to the failure to allege the requisite mens rea. Even if the DOE defendants had received the grievances or sick calls and took no action, the timeframe here was really quite compressed. It was after he had refused the follow-up visit with Dr. Greenman that Darby alleges that he sent an additional 15 sick call requests and grievances, but he was transferred out of the facility within two months. The timeframe is even more compressed at the second facility after he'd seen Defendant Hamilton. There were only an additional, I think, two or three weeks in which he alleges that he filed some grievances or sick call requests. The allegations are not sufficient to allege that the DOE defendants acted with deliberate indifference, even if they failed to respond to those complaints. As you noted in your question to my adversary, he essentially alleges that he complained and didn't receive a response. There's nothing in there that indicates that the DOE defendants, that even raises an inference that the DOE defendants acted with the required mental state for deliberate indifference. Well, I mean, if they didn't respond, can't that be enough? Um, particularly in a situation where he doesn't know who specifically was on the receiving end of these complaints. It could be enough, depending on, it could be enough under circumstances on which it's clear that they were made known of excessive risk of harm to his health. And here, the pleadings just don't support that. He complained that he continued to have a medical attention that was getting worse, and he needed, he had a medical condition that was getting worse and needed medical attention. And that is not sufficient to raise an inference that they acted with deliberate indifference here that he was suffering from here. Okay. And could you speak to your adversary mentioned various efforts to identify the DOE defendants and some correspondence with the magistrate? Can you shed some light on that? Sure. Yes. When the Health and Hospital Corporation is a defendant in an action in the trial courts, the city uses outside counsel, which was the case here. Heidel Petone represented HHC, who was a defendant at the time and later was dismissed, as well as Greenman below. They were looking for those sick hall logs and the grievances to try to assist in identifying the DOE defendants. They were informed that some documents were identified and they were awaiting receipt of those documents. In the meantime, they had informed the court that they planned to move to dismiss and had articulated the grounds for doing so. After informing the court of that, that's in the joint sentence on page 48, that happened on April 5th. They updated the court as to the DOE's and said we intend to move to dismiss on these grounds. In response to that on April 19th, and this is in the appendix on pages 54 and 58, Mr. Darby submitted his amended complaint, which is on page 58, as well as an opposition to the proposed motion to dismiss. And the court decided to rule on the motion to dismiss before those logbooks were ever viewed by counsel. I reached out to Heidel Petone before the argument and they said that because the court ruled on the motion, the logbooks had not yet been delivered and they didn't follow up once the court had ruled. Okay, that's it. Thank you. I have no further questions. Does either counsel have anything to add? Mr. Ryan, you didn't reserve time. I would love to. I reserved two minutes, Your Honor, and I just want to point out that the arguments that my adversary make are reflective, I think, of the attitude that the district court and the defendants take to Mr. Darby's complaint. Let me just focus in on what my adversary said about paragraph 37 of the complaint. If you recall, my adversary says that that allegation shows that Mr. Darby alleged himself that defendant Hamilton thought that the cleaning would solve Mr. Darby's gun pain. That is not what that allegation says. It says that Mr. Darby showed up and complained of gun pain. And then it says this, defendant Hamilton told Mr. Darby that the cleaning would solve Mr. Darby's gun pain. That is not an allegation about what was in defendant Hamilton's head. That is an allegation of what he told Mr. Darby to justify just doing a cleaning. And then the complaint says Mr. Darby protested and explained that he had a serious gun issue and needed more than a cleaning. And then the allegation says defendant Hamilton ignored him. Now, defendants want to take that allegation and turn it against Mr. Darby. And that's exactly what's inappropriate at the motion to dismiss stage. Same thing with Dr. Greenman, Your Honor. Mr. Darby didn't refuse a treatment. He was told they were going to pull his teeth. We've already established that the pulling of the teeth is not responsive in any way to Mr. Darby's complaints. And for both defendant Hamilton and defendant Greenman, the allegations show that whatever they thought they were offering Mr. Darby, he continuously told them, gave them information through his sickle request that it wasn't working. And that is it's that is pathways description of deliberate indifference. We've cited it in our brief. I said it to you already today, but it's 37 F third at 68. And this is subjective deliberate indifference, not the more plaintiff friendly objective deliberate indifference. When a doctor knows the extent of the plaintiff's pain, knows that the course of treatment was largely ineffective and declined to do anything more. That's deliberate indifference. That's what's been alleged. And on a fair reading of the complaint, and I'll just say on the pro se point, Your Honor, just to clarify all Mr. Darby, basically, there was an attorney that took one of Mr. Darby's old complaints, typed it up for him. As I understand it, added the legal claims at the end, right, to make it look like more like a legal complaint. But there were additional things that Mr. Darby wanted put in there that just weren't put in there. He didn't I don't even think talk to an attorney, frankly, Your Honor. So this was a case in which he was not receiving any real assistance of counsel. And it shows in the fact that these critical cases that this court decided in Harrison and chance in Hathaway aren't even addressed in the district court's decision. I mean, these are controlling cases in this in this in this in the dental sort of health care issue area, and they aren't even addressed or let alone distinguish in the district court's opinion. So it's for these reasons, Your Honor, that we respectfully request that the court reverse and remand. Thank you very much. We'll reserve decision and we are adjourned. Thank you, Your Honor. Thank you.